IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


FURMAN OSBOURNE,             :              CIVIL ACTION
          Petitioner,      :
                                     :
     v.                       :
                                     :
THERESA A. DELBALSO, et al.,    :
          Respondents.    :          No.  17-0072
                                     :

## REPORT AND RECOMMENDATION

LINDA K.  CARACAPPA
UNITED STATES CHIEF MAGISTRATE JUDGE

Pending before this court is a petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254, by a petitioner currently incarcerated in a State Correctional Institution in Pennsylvania.  For the following reasons, it is recommended that the petition for writ of habeas corpus be DENIED.

## I.      PROCEDURAL HISTORY

On November 14, 2006, following a jury trial in the Court of Common Pleas of Philadelphia County, petitioner was convicted of first degree murder and possession of an instrument of crime.  (CP-51-CR-0803611-2004).  On January 22, 2007, petitioner was sentenced to a term of life imprisonment for first degree murder and a concurrent sentence of one (1) to two (2) years' imprisonment for possessing an instrument of crime.  Id.  The Superior Court of Pennsylvania summarized the relevant facts of the case as follows:

> Deatrice Kennedy, the decedent's mother testified that as of May 2004, property located at 2019 North 19th Street in Philadelphia was owned by the decedent who used the property to house pit bulls. The decedent had known [petitioner] for eight or nine years at the time of his death. [Petitioner] and decedent were "like brothers." They worked together rehabbing the property at 2019 North 19th Street, and worked together installing alarms. [Petitioner] owned

1

two white vans and drove a white van every day for work. [Petitioner] bought a cell phone for decedent to be used for their alarm installation business. Her son disappeared and [petitioner's] behavior immediately prior to her discovery of his disappearance and thereafter was extremely strange. For example, just prior to discovering [Mrs. Kennedy's] son's disappearance Mrs. Kennedy spoke with her son who told her [petitioner] was coming to pick him up to go to the "North Philly" house (2019 North 19th Street in Philadelphia). After that conversation Ms. Kennedy repeatedly tried, unsuccessfully to call her son. His cell phone appeared to be shut off.  His body was discovered approximately ten (10) days later.

During that ten day period, [petitioner] called Mrs. Kennedy a number of times. During the first call, when Mrs. Kennedy asked [petitioner] if he had seen the decedent, he told her he had to go and hung up the phone. On June 5th, [petitioner] called Mrs. Kennedy's husband. [Petitioner] said he needed to get the van that he was storing at the Kennedys' vehicle storage company because he had a locksmith coming to change the locks. When they met, [petitioner] again acted strangely. He did not come to the car to speak to Mrs. Kennedy and said very little to Mr. Kennedy. Later that same day, [petitioner] called again. He told Mrs. Kennedy that the decedent's body was found on the third floor of 2019 North 19th Street. The decedent had been shot. [Petitioner] also told her that the SPCA was shooting the dogs that the decedent kept at the property. Before hanging up the phone, [petitioner] told Mrs. Kennedy that he was in Atlantic City and he'd be there soon. [Petitioner] never came to see them and did not come to his "brother's" funeral. (N.T. 11/8/06, 56-74).

Brandi Burrell, the mother of one of the decedent's children, testified that about a week prior the decedent's disappearance, [petitioner] spoke to Ms. Burrell on the phone. He told her the decedent had been avoiding him. [Petitioner told her] "if he wanted [the decedent] killed, it wouldn't be a problem". [Petitioner] also told her "the first thing he would do is have [the decedent's] cell phone cut off." He also said "no one would find [the decedent]." Later she spoke with [petitioner] and the decedent on a three way phone conversation. [Petitioner] and the decedent discussed meeting and going to the house at 19th Street. She was with the decedent when [petitioner] picked him up. She never saw the decedent again. Her calls to his phone went unanswered. The morning after [petitioner] picked up the decedent Ms. Burrell spoke with [petitioner].  [Petitioner] told her that he had just left the house on 19th Street and the decedent was still there. While the decedent was missing, [petitioner] asked Ms. Burrell to spend the night even though they had never been intimate before. [Petitioner] told her the decedent had "burned him out of $200." He said the decedent would probably not make an upcoming child support hearing because the decedent had "done so much dirt to people". On the day the body was discovered [petitioner] called Ms. Burrell and told her he had something to tell her that he could not over the phone. He eventually told her that [h]e was told that police were at the house on 19th Street and took a body out. He said that he did not know if it was the decedent who was killed or if he had killed someone. He also told her that the person had been shot in the chest and back and that there were still shell casings in the house.

Later, [petitioner] received a call from a detective and [petitioner] told the detective he was in Atlantic City doing a job and when he was finished he would come in for questioning. N.T. 11/8/06, 99-139).

Emerson Pitts testified that in May 2004, he ran a garage at 2015 North 19th Street in Philadelphia. He had seen the decedent and [petitioner] come to 2019 North 19th Street together from time to time. When he saw [petitioner] he would come to the house in a white Chevy van with a rack on it. On May 27th, 2004, Mr. Pitts arrived at his garage around 6:30 am. While he watched the news as part of his morning routine, he heard a popping sound 10 or 11 times. A few minutes later, he went outside and looked to his right up the street because that was the direction the sounds came from. 2019 North 19th Street is located to the right of Mr. Pitts' garage. Around 8 am, he stepped outside to call his parts man. He saw [petitioner] walking from the back of his white van towards the front. He then got in the van and drove off. This was within 5 minutes after Mr. Pitts heard the popping sounds. After speaking with detectives Mr. Pitts identified [petitioner] from a photo spread as the man he saw leaving 2019 North 19th Street on May 27th. Mr. Pitts did not see the decedent between May 27th and June 5th, the date the body was discovered (N.T. 11/6/06, 169-89).

The decedent was shot about fifteen times. He suffered two gunshot wounds to the head. The decedent also suffered three gunshot wounds to the chest. He also had three wounds to the back. There was a gunshot wound to the right leg, and also a wound to the neck. The decedent had defensive wounds to the left arm and to his hands. The cause of death was multiple gunshot wounds. Based on the rate of decomposition, the decedent had been dead for a week to a week and a half at the time of the June 6, 2004 autopsy. (N.T. 11/6/06, 216-35).

Niki Patton testified that she had known the decedent for two months prior to his death. She last saw him on May 25, 2004 and last spoke to him, via telephone, on May 26, 2004. Prior to that date she overheard a phone conversation between the decedent and [petitioner]. The decedent was yelling at [petitioner], asking why he'd changed the locks on the house at 19th Street and why [petitioner] had turned the decedent's cell phone off. The decedent told [petitioner] he needed the cell phone back on.

Officer Beltram of the Pennsylvania SPCA, investigating abandoned dogs inside the property entered the property after obtaining a warrant and entered with the police. After three neglected dogs were removed, the police discovered the decomposing body against the far wall in the middle third floor bedroom. (N.T. 11/09/2006, 56-64). Four fired cartridge casings were recovered: three .45 caliber, which were fired from the same gun and one 9mm. Six bullets and two bullet jackets were recovered from the body of the decedent. Six bullets and one bullet jacket were 9mm caliber and one bullet jacket was .45 caliber. There was no evidence of forced entry.

Donald Jones testified that in May and June of 2004, he was working in a garage in the same building as the garage owned by Mr. Pitts. Although he did not know the decedent personally, he had seen him going in and out of the house at 2019 North 19th Street. When he opened his garage on May 27, he heard a "pow pow" sound. He went outside and spoke with Mr. Pitts about the sounds. As he

headed back into the garage he heard more "pow pow pow pow" sounds. Mr. Jones went back outside and he saw someone come out of 2019 North 19th Street, lock the door, get in a white van, and drive off. The man drove off within ten minutes of the last gunshot. He testified that the gunshots that he heard sounded like two different guns because one set of shots sounded much louder than the other. (N.T. 11/09/06, 162-175).

[Petitioner] testified that he last saw the decedent between 7:30 and 8 in the morning on May 27th, 2004 and denied killing him. He proffered explanations for his strange behavior including deactivating the decedent's cell phone while he was missing. He admitted that he owned two guns, a 9-mm and a .45 automatic, but said that he had given both to the decedent. On cross-examination, [petitioner] testified that he had been in the military and received weapons training. (N.T. 11/10/06, 202-238).

After hearing the evidence, the arguments of counsel and the law, the jury found [petitioner] shot and intentionally killed his friend in that third floor bedroom on the morning of May 27, 2004.

Commonwealth v. Petitioner, No. 2432 EDA 2015, 2016 WL 6268374, at 1, 8-9 (Pa. Super. Ct. Oct. 26, 2016) (adopting trial court's summary of facts).

Petitioner did not file a timely direct appeal.

On January 29, 2007, petitioner filed a pro se petition under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, et seq., seeking to have his appellate rights reinstated nunc pro tunc. See Court of Common Pleas of Philadelphia County Docket, CP-51-CR-0803611-2004, at 10. Attorney Elayne C. Bryne, Esq. was appointed and filed an amended PCRA petition on March 6, 2008. See id. at 11. On May 7, 2008, the trial court granted petitioner's request and reinstated petitioner's direct appeal rights. See id. at 12. Thereafter, on May 29, 2008, counsel filed a timely direct appeal, and on November 18, 2009, the Pennsylvania Superior Court affirmed petitioner's judgment of sentence. Commonwealth v. Osbourne, 988 A.2d 726 (Pa. Super. 2009). On May 18, 2010, the Pennsylvania Supreme Court denied petitioner's petition for allowance of appeal. See Court of Common Pleas of Philadelphia County Docket, CP-51-CR-0803611-2004, at 13.

On February 18, 2011, petitioner filed a timely pro se petition for collateral

review under the PCRA.  See id.  Counsel was appointed, and on January 25, 2012, petitioner

filed a petition to remove counsel and proceed pro se.  On August 16, 2013, the state court

granted petitioner's petition to proceed pro se.  Thereafter, on July 17, 2015, the Court of

Common Pleas dismissed petitioner's petition.  The July 17, 2015 dismissal incorrectly stated

petitioner's petition was dismissed as untimely.  Thereafter, however, on March 9, 2016, the

Court of Common Pleas filed a post-judgment opinion under Pa. R. App. P. 1925(a) addressing

the merits of petitioner's claims and acknowledging the July 17, 2015 order incorrectly stated

petitioner's petition was untimely.  See Resp. to Habeas Pet., 7/10/17, Ex. B (Court of Common

Pleas Opinion, March 9, 2016, at fn. 5).  The Court of Common Pleas noted petitioner's petition

was timely, but it was denied as meritless.  See id.  Petitioner filed a timely notice of appeal with

the Pennsylvania Superior Court.  On December 3, 2015, while petitioner's appeal was pending

in the Superior Court, petitioner filed a pro se petition for Writ of Habeas Corpus with the United

States District Court Eastern District of Pennsylvania.  See 15-CV-6493.  The Honorable Gerald

J. Pappert referred said habeas petition to the undersigned for report and recommendation.  See

id., Doc. 3.  On March 31, 2016, the undersigned recommended that the habeas petition be

dismissed without prejudice as unexhausted.  See id., Doc. 11.  The report and recommendation

was approved and adopted on May 20, 2016 and petitioner's habeas petition was dismissed

without prejudice.  See id., Doc. 15.  On October 26, 2016 the Superior Court of Pennsylvania

affirmed the denial of PCRA relief.   Commonwealth v. Petitioner, No. 2432 EDA 2015, 2016

WL 6268374 (Pa. Super. Ct. Oct. 26, 2016).

        On December 23, 2016, petitioner filed the instant pro se petition for Writ of

Habeas Corpus.[1]   Petitioner raises the following seven (7) grounds for relief:

_____

1 Although the habeas petition was not docketed by this court until January 6, 2017, (Doc. 1), the "mailbox rule"
applies.  Under the "mailbox rule," a pro se prisoner's habeas petition is considered filed on the date the prisoner

1. Petitioner's constitutional rights were violated when direct appeal counsel provided ineffective assistance by failing to seek correction of incomplete trial transcripts;

2. Trial counsel was ineffective for failing to object to the introduction into evidence of a photograph of the victim with his children;

3. Trial counsel was ineffective for failing to object to prosecutorial misconduct during cross-examination;

4. Trial counsel was ineffective for failing to object to questioning by the Commonwealth of witnesses;

5. Trial counsel was ineffective for failing to object to statements made by the Commonwealth during closing arguments;

6. Appellate counsel was ineffective for failing to raise a claim that the trial court erred in the jury charge; and

7. Trial Counsel was ineffective for failing to prepare adequately for trial.

See Habeas Pet. 1/06/17.

After detailed review of the state court record, we find petitioner is not entitled to relief and petitioner's petition for habeas corpus should be denied.

II.     STANDARDS OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for Writ of Habeas Corpus from a state court judgment bears a significant burden. Section 104 of the AEDPA imparts a presumption of correctness to the state court's determination of factual issues – a presumption that petitioner can only rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1) (1994). The statute also grants significant deference to legal conclusions announced by the state court as follows:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was adjudicated
> on the merits in State court proceedings unless adjudication of the claim -

---

delivers the complaint to prison authorities for filing. See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, petitioner verified that his petition was placed in the prison mailing system on December 23, 2016.

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court of the United States, in Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 1518-19 (2000), interpreted the standards established by the AEDPA regarding the deference to be accorded state court legal decisions, and more clearly defined the two-part analysis set forth in the statute. Under the first part of the review, the federal habeas court must determine whether the state court decision was "contrary to" the "clearly established federal law, as determined by the Supreme Court of the United States." Williams, 529 U.S. at 404. Justice O'Connor, writing for the majority of the Court on this issue, explained that a state court decision may be contrary to Supreme Court precedent in two ways: (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours [the Supreme Court's]." Id. at 405. However, this "contrary to" clause does not encompass the "run-of-the-mill" state court decisions "applying the correct legal rule from [Supreme Court] cases to the facts of the prisoner's case." Id. at 406.

To reach such "run-of-the-mill" cases, the Court turned to an interpretation of the "unreasonable application" clause of § 2254(d)(1). Id. at 407-08. The Court found that a state court decision can involve an unreasonable application of Supreme Court precedent in one of two ways: (1) "if the state court identifies the correct governing legal rule from this Court's cases

but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. However, the Supreme Court specified that under this clause, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The Supreme Court has more recently pronounced: "The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 573, 127 S. Ct. 1933, 1939 (2007).

III.    DISCUSSION

The instant habeas petition contains seven (7) claims for relief. The court will address each of petitioner's claims in turn.

A.    Claim One: Whether Petitioner's Constitutional Rights Were Violated When Direct Appeal Counsel Provided Ineffective Assistance by Failing to Seek Correction of Incomplete Trial Transcripts

Petitioner's first claim alleges that the trial and sentencing transcripts from petitioner's trial are missing portions of testimony. See Habeas Pet., 1/6/17, Ex. 1 at 14-16 and Ex. 3 at 4-10. Petitioner claims that the court reporter omitted from the transcript a portion of the prosecutor's cross-examination of petitioner. Id. Petitioner alleges that after the prosecutor questioned petitioner about the fact that petitioner served in the military, the prosecutor then allegedly asked petitioner if he was trained to kill, would kill if given an order to do so, and if petitioner was discharged from the military for fighting. See Habeas Pet., 1/6/17, Ex. 1 at 14-16,

25-30 and Ex. 3 at 4-10.  Petitioner claims that the court reporter intentionally omitted these questions from the trial transcripts and then deleted the audio recording of the testimony. Petitioner argues that direct appeal counsel was ineffective for refusing to pursue this claim and have the omitted material corrected in the transcript.  Id.

The Sixth Amendment recognizes the right of every criminal defendant to effective assistance of counsel.  U.S. Const., Amend. VI.  The applicable federal precedent for ineffective assistance of counsel claims is the well-settled two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To establish an ineffective assistance of counsel claim, a petitioner must first prove "counsel's representation fell below an objective standard of reasonableness."  Id.  In analyzing counsel's performance, the court must be "highly deferential."  Id. at 689.  The Court explained:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstance of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).  A convicted defendant asserting ineffective assistance must therefore identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.  Strickland, 466 U.S. at 690.  The reviewing court then must determine whether, in light of all the circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance."  Id.  It follows that counsel cannot be ineffective for declining to raise a meritless issue.  See Premo v. Moore, 562 U.S. 115, 124 (2011).

The second part of the Strickland test requires a petitioner to demonstrate that

counsel's performance "prejudiced the defense" by depriving petitioner of "a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 694.

If a petitioner fails to satisfy either prong of the Strickland test, it is unnecessary to evaluate the other prong, as a petitioner must prove both prongs to establish an ineffectiveness claim. Moreover, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id. at 697.

For the reasons that follow, we find petitioner has not shown by clear and convincing evidence that the factual determination of the state court was incorrect or that direct appeal counsel's failure to pursue a claim that the trial transcript was incomplete provided petitioner with ineffective assistance of counsel.

On direct appeal, appointed counsel filed an appellate brief on behalf of petitioner, and a petition for remand for appointment of new counsel due to petitioner's disagreement with direct appeal counsel's decision not to pursue a claim that the trial transcript was incomplete[2]. Direct appeal counsel informed the Superior Court that counsel had investigated petitioner's claim and found it baseless. Counsel explained that she questioned Shannon Gagliardi, the court stenographer at petitioner's trial, and Ms. Gagliardi stated that the court did not order an audio recording of the trial. Ms. Gagliardi stated that after she transcribed the recording that was on the stenographer's own personal equipment, said recording was deleted. A copy of the transcribed notes of testimony was submitted by direct appeal counsel to

---

[2] The Superior Court explained that when a petitioner, who is represented by counsel, files a pro se petition, brief, or motion said document must be forwarded to counsel. If the brief alleges ineffectiveness of appellate counsel, counsel is required to petition the Superior Court for remand and address petitioner's allegations of ineffectiveness. Commonwealth v. Osbourne, 988 A.2d 726, at 8 (Pa. Super. 2009), citing Commonwealth v. Battle, 879 A.2d 266, 268-269 (Pa. Super. 2005).

the court.  See Habeas Pet. 1/6/17, Ex. 2 at 5.  The Superior Court summarily found no merit to petitioner's claim.  The court found that it had been provided with a complete copy of petitioner's trial and sentencing transcript.  See Commonwealth v. Osbourne, 988 A.2d 726, at 9 (Pa. Super. 2009).  Petitioner also raised this claim on PCRA collateral appeal, and the court found that petitioner's claim was previously litigated on direct appeal and was also baseless.  See Resp. to Habeas Pet., 7/10/17, Ex. B. PCRA Ct. Op., 3/9/2016 at 10.

Pursuant to 28 U.S.C. §2254, the court presumes that any findings of fact made by state courts are correct.  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to provide clear and convincing evidence that the state court finding that petitioner's allegation that his trial transcript was intentionally transcribed incomplete was baseless.  Direct appeal counsel questioned the court stenographer and was informed that the stenographer transcribed all of the notes of testimony.  Direct appeal counsel provided the court with the complete notes of testimony.  The state court accepted the court stenographer's representation that she correctly transcribed the entirety of the notes of testimony and direct appeal counsel's representation that counsel provided the court with the complete copy.  Because petitioner has not shown by clear and convincing evidence that the determinations of the state court were incorrect, petitioner's ineffective assistance of counsel claim must fail.  See 28 U.S.C. § 2254(e)(1).  As such, we recommend claim one be denied.

Additionally, a mere absence of transcripts "does not constitute per se reversible error."  United States v. Sierra, 981 F.2d 123, 125 (3d Cir.1992).  Rather, "to be successful with an argument that because a portion of the trial transcript is missing the case 'warrants reversal,' [a defendant] must make 'a specific showing of prejudice.'"  United States v. Sussman, 709 F.3d

155, 163 (3d Cir.2013) (quoting Sierra, supra).  Petitioner appears to argue that the alleged

missing testimony would have supported a claim of prosecutorial misconduct on direct appeal.

In petitioner's affidavit, petitioner claims to remember with great specificity the missing

testimony.  Petitioner claims the missing testimony was as follows:

> Q.    Were you trained to kill?
> A.    No sir, I was trained to protect.
> [Prosecutor] read the military definition of 11 bravo infantry in open court, and
> then asked if that defined my job.
> Q.    So you were trained to kill?
> A.    No sir, I was trained to protect.
> Q.    The definition I just read states that you had training to kill.
> A.    I was trained to protect the citizens of the United States of America.
> Q.    What about handguns?
> A.    No.
> Q.    How come everyone else trained with a handgun, but not you?
> Q.    In order for you to protect, you must kill…right?
> A.    No sir.
> Q.    If you were given an order to kill, would you have to follow that order?
> A.    If I was given an order…yes, but I'm not in the military anymore.
> Q.    You were kicked out for fighting…right?
> A.    No sir, I was discharged for medical reasons….

See Habeas Pet., 1/6/17, Ex. 1, 29-30.

Assuming arguendo, that petitioner's recollection of the testimony is correct,

petitioner's recollection of the missing testimony does not support a "specific showing of

prejudice."  Petitioner's recollection of the prosecutor's questioning of petitioner shows that

petitioner was able to tell the jury that petitioner was trained to protect the citizens of the United

States and was discharged from the military for medical reasons and not for fighting.  Petitioner

has failed to show that if the trial transcripts contained the alleged missing testimony, that

petitioner would have been able to prove prosecutorial misconduct.  Thus, petitioner has failed to

prove that direct appeal counsel was ineffective for failing to pursue a claim that the trial

transcript was incomplete. To establish prejudice, a petitioner must show "there is a reasonable

probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Petitioner has failed to show that the outcome of his direct appeal would have been different if direct appeal counsel had asserted this claim on direct appeal. Thus, it is recommended that petitioner's claim one be denied.[3]

      B.   Claim Two: Whether Trial Counsel was Ineffective for Failing to Object to the Introduction Into Evidence of a Photograph of the Victim with his Children

Petitioner's second claim is that trial counsel was ineffective for failing to object the introduction into evidence of a photograph of the victim with his children. See Habeas Pet., 1/6/17, Ex. 1 at 16-17 and Ex. 3 at 11-15. Petitioner claims that the jury being allowed to view said photo was prejudicial to petitioner, and that petitioner was not given notice that the photograph was going to be introduced.

As explained in footnote 3 of the instant report and recommendation, Commonwealth witness, Enez Lundy, was permitted to present the jury with a photograph which showed the victim and his children. Ms. Lundy identified her children with the victim by name. N.T. 11/9/06 at 200-201.

---

3 Petitioner's memorandum of law in support of his habeas petition also includes a sentence where petitioner appears to claim that testimony from Commonwealth witness Enez Lundy was removed from the trial transcripts. Petitioner states that " 'Ms. Lundy' testimony when asked about the children in the photograph explained how even though the victim had children with different women he made sure that the children grew up together." See Habeas Pet. 1/6/17, Ex. 3 at 8. A review of the notes of testimony revealed that Ms. Lundy was the mother of two of the victim's children. N.T. 11/9/06 at 200-201. During Ms. Lundy's testimony she presented the jury with a photograph that depicted the victim with several of his children. Id. The notes of testimony reveal that when asked how many children in the photograph were hers with the victim, Ms. Lundy's full answer was "two of them, little Steven and you can't see the little baby right here, but this [is] Zion down here." Id. at 201. Unlike the testimony that was allegedly omitted pertaining to petitioner's military service, petitioner makes no attempt to support the allegation that testimony from Ms. Lundy was also omitted. Petitioner makes a one sentence allegation and offers no proof to the court. Petitioner also makes no argument as to how direct appeal counsel was ineffective for failing to argue that testimony was missing from the trial transcript as to Ms. Lundy, when petitioner has no proof of said testimony. Petitioner has failed to prove "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668 (1984). Counsel cannot be ineffective for declining to raise a meritless issue. See Premo v. Moore, 562 U.S. 115, 124 (2011).

Petitioner raised this claim on collateral appeal and the Superior Court denied the

claim as meritless, finding introduction of the photograph amounted to harmless error.    See

Osbourne, 988 A.2d 726, at 3-4.  The Superior Court found as follows:

> [W]e are mindful that in Commonwealth v. Story, 383 A.2d 155, 160 (Pa. 1981), our Supreme Court held that photographs of a victim and/or his family, which are irrelevant to a determination of guilt or innocence, are inadmissible. The Commonwealth's stated purpose in offering the photograph of the victim and his children was to establish that he had been a "life in being" prior to the homicide.  See Brief for the Commonwealth at 14.  However, [petitioner] and Lundy, as well as Deatrice Kennedy (the victim's mother), Brandi Burrell (the mother of one of the victim's children) and Niki Patton, each testified that the victim was alive shortly before his disappearance. See Commonwealth v. Rivers, 644 A.2d 710, 716 (Pa. 1994)(holding that a photograph of the victim was not necessary to establish that he had been a "life in being" before the homicide where trial witnesses had established this fact)…. Thus, the existence of the victim as a life in being was clearly established through the testimony of various witnesses, and the Commonwealth did not need to introduce the photograph to establish this fact. See id.  Moreover, the photograph was not relevant to the question of [petitioner's] guilt or innocence. See Story, 383 A.2d at 160. Therefore, we hold that the trial court erred when it admitted the photograph into evidence.
>
> However, our inquiry does not end with this conclusion.  The question remains as to whether the error in admitting the photograph was "harmless beyond a reasonable doubt." Story, 383 A.2d at 164.  An error is harmless when "the evidence of guilt was so overwhelming, and the error ... so insignificant by comparison, that the error was harmless beyond a reasonable doubt." Id. at 169.
>
>  Our review of the record reflects that the evidence of [petitioner's] guilt, as described in the PCRA court's opinion, was overwhelming, and that the error was insignificant by comparison. See PCRA Court Opinion, 3/9/16, at 2–6. Accordingly, we conclude that the error was harmless beyond a reasonable doubt, and [petitioner] is not entitled to relief on this claim. See id.

Osbourne, 988 A.2d at 3-4.

The Superior Court found that the introduction of the photograph amounted to

harmless error because the other evidence of record of petitioner's guilt was overwhelming.  Any

error in admitting the photograph was insignificant when compared to the overwhelming

evidence against petitioner.  Id.

The Superior Court's finding that petitioner was not prejudiced by trial counsel's failure

to object to the introduction of the photograph of the victim is not an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. With the evidence against petitioner, as cited <u>supra</u>, petitioner has failed to prove that counsel's performance "prejudiced the defense" by depriving petitioner of "a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." <u>Id.</u> at 694. Taking into consideration the evidence introduced against petitioner, we cannot conclude that the admission of the photograph of the victim affected the outcome of petitioner's trial in any substantial way—accordingly, it constituted harmless error. <u>See</u>, e.g., <u>Fahy v. State of Connecticut</u>, 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963)(describing that to determine whether an error was harmless, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction"), <u>Mayle v. Felix</u>, 545 U.S. 644, 672, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (amplifying that such a determination requires "a careful look at the other evidence admitted at trial"). Petitioner has failed to prove the result of this trial would have been different but for the introduction of the photograph of the victim. Thus, petitioner has failed to prove ineffective assistance of trial counsel. It is recommended that petitioner's second claim be denied.

  C. <u>Claim Three: Whether Trial Counsel was Ineffective for Failing to Object to Prosecutorial Misconduct During Cross-Examination</u>

   Petitioner's third claim alleges that trial counsel was ineffective for failing to object when the prosecutor allegedly committed misconduct during the cross-examination of petitioner. <u>See</u> Habeas Pet., 1/6/17, Ex. 1 at 17-19 and Ex. 3 at 15-20. Petitioner claims that the questions in regards to petitioner's military history amounted to prosecutorial misconduct. <u>Id.</u>

Petitioner's third claim again focuses on the alleged purposefully omitted testimony from petitioner's trial transcripts in regards to petitioner's military service. As discussed in claim one <u>supra</u>, petitioner has failed to prove that questions from the prosecutor in regards to petitioner being "trained to kill" or if petitioner was "trained to follow orders to kill" were ever asked during petitioner's cross-examination. The Superior Court found that the court was provided with a complete copy of the trial transcript, and that line of questioning did not exist in the trial transcript. This court finds that trial counsel cannot be found ineffective for failing to object to questions that petitioner has not proven were ever asked by the prosecutor.

Petitioner raised this claim on collateral appeal and the PCRA court found it meritless. See Resp. to Habeas Pet., 7/10/17, Ex. B. PCRA Ct. Op., 3/9/2016 at 11. The PCRA court noted that petitioner failed to state with any specificity which questions petitioner was objecting to, so the court assumed petitioner was referring to the Commonwealth's limited questions in regards to whether petitioner had military training. Id. The notes of testimony list the cross-examination of petitioner in regards to his military training as follows:

> Q. You've been in the military?
> A. Yes, sir.
> Q. Tell us about your military training.
> A. I was 11 Bravo Infantry. I stayed in the military for two years, and I broke my leg and I was discharged.
> Q. Had nothing to do with an attack or anything like that?
> A. No, sir.
> Q. And how about weapons training? Did you have weapons training in the military?
> A. Yes, sir, I did. I had weapons training with an M-16 assault rifle. That's it.

N.T. 11/1/06 at 188-189. The PCRA court found that limited questioning about petitioner's weapons training was designed to demonstrate petitioner's familiarity and access to weapons, which was clearly relevant evidence and admissible. See Resp. to Habeas Pet., 7/10/17, Ex. B.

PCRA Ct. Op., 3/9/2016 at 11, <u>citing</u> <u>Commonwealth v. DeJesus</u>, 880 A.2d 608 (Pa. 2005);

<u>Commonwealth v. Peterkin</u>, 513 A.2d 373 (Pa. 1986). Thus, the PCRA court dismissed

petitioner's claim as baseless. "The Supreme Court has never held a lawyer to be ineffective for

failing to object to the admission of relevant evidence. Such a finding would give attorneys a

legitimate reason to object to all evidence introduced at trial, even that which is obviously

relevant and admissible." <u>Brown v. Shannon</u>, No. 01–788, 2002 WL 1160817, at *7 (E.D.Pa.

May 30, 2002). Further, counsel cannot be considered ineffective for failing to raise a meritless

objection. <u>See</u> <u>Moore v. Deputy Comm'r(s) of SCI–Huntingdon</u>, 946 F.2d 236, 245 (3d

Cir.1991). Thus, because the evidence here was relevant and admissible, trial counsel cannot be

deficient for failing to object to its admissibility. It is recommended that petitioner's third claim

be denied.

> D.  <u>Claim Four and Claim Five:  Whether Trial Counsel was Ineffective for</u>
> <u>Failing to Object to Questioning by the Commonwealth of Witnesses;</u>
> <u>Whether Trial Counsel was Ineffective for Failing to Object to Statements</u>
> <u>Made by the Commonwealth During Closing Arguments</u>

Petitioner's fourth claim alleges that trial counsel was ineffective for failing to

object to questions asked by the Commonwealth on direct and redirect examination of several

witnesses, including Wendell Kennedy, the victim's father, Deatrice Kenney, the victim's

mother, Brandi Burrell, the mother of one of the victim's children, and Enez Lundy, the mother

of two of the victim's children. <u>See</u> Habeas Pet., 1/6/17, Ex. 1 at 19 and Ex. 3 at 20-22.

Petitioner alleges that the questions were asked to invoke the jury to act out of sympathy for the

victim and his family. <u>Id.</u>  Petitioner claims trial counsel should have objected to the

Commonwealth asking the victim's mother and father how they felt when they found out the

victim was murdered and trial counsel should have objected to the Commonwealth asking the

mothers of the victim's children how many children they had and what their names were. <u>Id.</u>

Petitioner's fifth claim is that trial counsel was ineffective for failing to object to the statements made by the Commonwealth during closing arguments. <u>See</u> Habeas Pet., 1/6/17, Ex. 1 at 19-21 and Ex. 3 at 22-24. Petitioner argues that the Commonwealth attorney committed misconduct when he "ask[ed] the jury to consider the outcome of the case for the victim, the victim's children, or the victim's family….suggest[ed] to the jury that their interest should be to see [petitioner] convicted…[and] [told] the jury that [petitioner] is a liar…" <u>See</u> Habeas Pet., 1/6/17, Ex. 3 at 23, <u>citing</u> N.T. 11/13/06, at 89, 99, 124-125. Petitioner argues that trial counsel should have objected to these statements.

Petitioner raised a version of the instant claims four and five on collateral PCRA appeal and the state court dismissed them as waived. The PCRA court explained that in petitioner's collateral appeal, petitioner failed to state which statements petitioner was arguing trial counsel should have objected to. The PCRA court found they could not guess as to which questions petitioner was taking issue with. <u>See</u> Resp. to Habeas Pet., 7/10/17, Ex. B. PCRA Ct. Op., 3/9/2016 at 11.

Petitioner's fourth and fifth claims are procedurally defaulted because petitioner has failed to fairly present the claims in state court.

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is a petitioner must exhaust all remedies available in the state courts. <u>See</u> 28 U.S.C. § 2254(b)(1). If a petitioner has the right under state law to raise, by any available procedure, the question presented, then he will not be deemed to have exhausted his available state court remedies. 28 U.S.C. § 2254(c)(1997). The exhaustion requirement is grounded on principles of comity to ensure state courts have the

initial opportunity to review federal constitutional challenges to state convictions.  See Werts v.

Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by

fairly presenting the substance of the federal habeas claim to the state's highest court, either on

direct appeal or in a post-conviction proceeding in a procedural manner permitting the state

courts to consider it on the merits.  See Duncan v. Henry, 513 U.S. 364, 365 (1995).

A petitioner's failure to exhaust state remedies may be excused "if requiring

exhaustion would be futile, i.e., exhaustion is impossible due to state procedural default[4] and

state law clearly forecloses review of the unexhausted claim."  Werts, 228 F.3d at 192; see also

Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000) (noting if state procedural rules bar petitioner

from seeking further relief in state courts, exhaustion will be deemed satisfied because there is

absence of available state corrective process).  Although, the exhaustion requirement may be

excused, habeas review on the merits of claims might still be precluded due to procedural

default.  Werts, 228 F.3d at 192.

A federal court cannot review the merits of procedurally defaulted claims unless a

petitioner demonstrates either cause for the procedural default and actual prejudice resulting

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the

claims.  See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).  To demonstrate cause

for a procedural default, a petitioner must show "some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477

U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show errors during his

trial created more than a possibility of prejudice; he must show the errors "worked to his actual

---

4 A state procedural default occurs when the state court refuses to hear the merits of the claim because either (1) the
defendant waived a PCRA claim which could have been raised in an earlier proceeding but was not, or (2) some
other procedural bar exists, such as a statute of limitations.  Lambert v. Blackwell, 134 F.3d 506 (3rd Cir. 1997).

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494 (internal citations and emphasis omitted).

The PCRA court found petitioner's claims four and five waived. Pennsylvania law requires appellants to "meaningfully discuss and apply the standard governing the review of ineffectiveness claims" before they can be entitled to any relief. See Commonwealth v. Bracey, 795 A.2d 935, 940 n.4 (Pa. 2001). Pa. R. App. P. 2119(a) requires that each question to be argued be "followed by such discussion and citation of authorities as are deemed pertinent." Reliance on this rule has been held to be an independent and adequate state law ground precluding federal habeas review. See Leake v. Dillman, 594 Fed.Appx. 756, 758-59 (3d Cir. 2014)(holding that the Superior Court's reliance on Bracey and failure to meaningfully develop arguments on appeal and cite to appropriate authorities is an independent and adequate state law ground).

Here, petitioner's failure to comply with the state rule requiring the development of his ineffective assistance of counsel claims is an independent and adequate state law ground barring habeas relief, and his claims are procedurally defaulted. Id. at 759. Moreover, petitioner has not asserted, much less demonstrated, any "cause or prejudice" or a "fundamental miscarriage of justice" to excuse the procedural default of these claims. Coleman, 501 U.S. at 750. Therefore, it is recommended that petitioner's fourth and fifth claims be dismissed as procedurally defaulted.

E.  Claim Six: Whether Appellate Counsel was Ineffective for Failing to Raise a Claim that Trial Court Erred in the Jury Charge

Petitioner's sixth claim is that appellate counsel was ineffective for failing to raise a claim that the trial court erred by instructing the jury that they were not bound by the offense date stated in the criminal information, May 27, 2004, and that the jury could find petitioner

guilty if they found beyond a reasonable doubt that petitioner had committed the crime charged even though the jury may not find the crime was committed on the particular date in the indictment. See Habeas Pet., 1/6/17, Ex. 1 at 21-22 and Ex. 3 at 24-27. Petitioner argues that the jury instruction removed the burden from the Commonwealth to prove beyond a reasonable doubt that petitioner committed the offense charged on the date charged. Petitioner claims that the jury instruction operated to lift the burden of proof on an essential element of the offense. See id.

Petitioner raised this claim on collateral appeal before the PCRA court. The PCRA court denied the instant claim six as meritless. See Resp. to Habeas Pet., 7/10/17, Ex. B. PCRA Ct. Op., 3/9/2016 at 10-11. The PCRA court found that the underlying claim of trial court error was meritless, thus, appellate counsel could not be found ineffective for failing to raise a meritless claim. See id. The PCRA court explained that the Commonwealth requested the jury instruction after defense counsel told the jury during closing argument that the date of the crime was an element of the crime and that the Commonwealth needed to prove beyond a reasonable doubt that the murder occurred on May 27, 2004. See id., citing N.T. 11/13/06, 51-52-140-141. The PCRA court cited the jury instruction as follows:

> The indictment in this case, ladies and gentlemen, alleges that the crime was committed on or about May 27, 2004. You are not bound by the date alleged in the indictment. It is not an essential element of the crime charged.
> You may find the defendant guilty if you are satisfied beyond a reasonable doubt that he committed the crime charged in the indictment even though you are not satisfied that he committed it on the particular date alleged in the indictment.

See id., citing N.T. 11/13/06, 162. The Superior Court reviewed this claim on collateral appeal and affirmed the PCRA court's denial as meritless. See Resp. to Habeas Pet., 7/10/17, Ex. B., Superior Ct. Op., 10/26/16 at 3. The Superior Court found that under Pennsylvania Law, the date on which a murder was committed is not an essential element of the crime of murder. Id.,

citing Commonwealth v. Einhorn, 911 A.2d 960, 978 (Pa. Super. 2006)(holding that the date of the murder was not an essential element of the crime of homicide, and instructing that indictments are not to be construed in an overly technical manner.)

To the extent petitioner is arguing that the jury instruction violated state law because the date of the offense is an essential element of the crime of murder, petitioner's claim must be dismissed because the state court state law determination is binding on this court. A federal habeas court may not consider a petitioner's claim of state law violations, but must limit its review to issues of federal law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (not the province of the federal court to re-examine a state court's determinations on state law questions); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable."); Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) ("[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause.").

To the extent petitioner is asserting a federal claim that appellate counsel was ineffective for failing to raise the instant claim that petitioner's due process rights were violated under the Constitution, the Superior Court decision was not contrary to or an unreasonable application of federal law.

A jury instruction violates the due process clause if it "reliev[es] the State of the burden of proof ... on the critical question of petitioner's state of mind." Sandstrom v. Montana, 442 U.S. 510, 521 (1979). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). The question is whether the ailing instruction "so infected the entire trial that the

resulting conviction violates due process." Id. (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991). An instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72. A state court's PCRA ruling that the jury instructions are adequate must be given deference under AEDPA. Murray v. Diguglielmo, 591 Fed.Appx. 142, 147 (3d Cir. 2014).

The state court decision was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, which allows habeas relief for jury instructions only if they included an error that infected the entire trial with unfairness. See Estelle, 502 U.S. at 72; see also 28 U.S.C. § 2254(d). This court must accept the Superior Court's conclusion that the trial court's jury instructions were proper under Pennsylvania law unless petitioner can show there was some error in the instructions that "infused" his entire trial with unfairness. Estelle, 502 U.S. at 72. Petitioner fails to present any law to suggest that the instructions were improper under either state or federal standards. Petitioner simply argues that the date was an essential element of the crime, without providing the court with any support for that allegation. Petitioner also fails to establish how the instruction infected his trial. The Superior Court, therefore, properly concluded that petitioner's trial counsel could not have been ineffective for failing to raise a meritless claim. Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2010).

F. Claim Seven: Whether Trial Counsel was Ineffective for Failing to Prepare Adequately for Trial

Petitioner's seventh and final claim is that trial counsel was ineffective for failing generally to prepare for trial. See Habeas Pet., 1/6/17, Ex. 1 at 22-23, Ex. 3 at 27, and Ex. 4, at 1-4. Petitioner argues that trial counsel was ineffective for failing to investigate possible witnesses, "Mr. Muhammed" and "Mrs. Sharon Jones," who were both mentioned by

"Commonwealth witness Donald Jones, during his trial testimony and out of court statement."
See, Habeas Pet., 1/6/17, Ex. 4, at 1.  Petitioner also alleges that counsel was ineffective for
failing to "conduct an investigation in reference to taking photos of the crime scene, obtain
phone records, and file pretrial suppression motion [of the] murder weapon."  See, Habeas Pet.,
1/6/17, Ex. 4, at 2.

Petitioner raised this claim on collateral appeal before the PCRA court.  The
PCRA court dismissed the claim as meritless, finding that petitioner failed to adequately develop
the claim.  See Resp. to Habeas Pet., 7/10/17, Ex. B. PCRA Ct. Op., 3/9/2016 at 11-12.  The
PCRA court found that petitioner failed to provide any affidavit or certification demonstrating
"what additional evidence or witness should have been presented."  See id.  Additionally, the
PCRA court ruled that petitioner failed to "advance [any] legal theory or authority to
demonstrate why the evidence should have been suppressed…"  See id.

In the instant habeas petition, petitioner again offers no proof as to what evidence
or testimony these potential witnesses would have provided.  Additionally, petitioner fails to
allege which phone records trial counsel should have obtained or what additional evidence
photographs of the crime scene would have provided.  Petitioner also offers no legal theory as to
why a motion to suppress the murder weapon could have been granted.

Petitioner's habeas petition offers almost no facts and no authority for his claim.
See Rule 2(c), 28 U.S.C. § 2254; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)
("vague and conclusory allegations contained in a [habeas] petition may be disposed of without
further investigation"); Zettlemeyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (petitioner
"cannot meet his burden to show that counsel made errors so serious that his representation fell
below an objective standard of reasonableness based on vague and conclusory allegations" and

instead "must set forth facts to support his contention"); see also McFarland v. Scott, 512 U.S. 849, 856 (1994) (habeas petitions "must meet heightened pleading requirements").  Petitioner has failed to show that counsel's alleged failure to properly investigate and prepare for trial was an error so serious that his representation fell below an objective standard of reasonableness. Petitioner's vague allegations, without more, fail to meet petitioner's burden to show petitioner suffered prejudice, and that but for counsel's alleged error, the results of the proceeding would have been different.  Thus, it is recommended that petitioner's seventh claim be denied.

Therefore, we make the following:

RECOMMENDATION

AND NOW, this 10th day of August, 2017, IT IS RESPECTFULLY RECOMMENDED that the petition for Writ of Habeas Corpus be DENIED.  Further, there is no probable cause to issue a certificate of appealability.

BY THE COURT:


  /S LINDA K. CARACAPPA_____
LINDA K. CARACAPPA
UNITED STATES CHIEF MAGISTRATE JUDGE


[Additional Note:  The court wishes to recognize the scholarship of Meghan Porter, Esquire in the research and preparation of this Report and Recommendation.]